UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61822-CIV-DIMITROULEAS

CECELIA A. HICKS, on behalf
of herself and others similarly situated,

        Plaintiff,                              Magistrate Judge Rosenbaum

vs.

CLIENT SERVICES, INC.,

        Defendant.
_____/

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

THIS CAUSE is before the Court upon the Plaintiff Cecelia A. Hicks's Motion for Class Certification [DE 61] filed on October 16, 2008. The Court has carefully considered the Motion, the Defendant Client Services, Inc.'s Memorandum in Opposition to Plaintiff's Motion for Class Certification [DE 71] filed on November 10, 2008, the Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Class Certification [DE 79] filed on November 21, 2008, and the parties' affidavits and exhibits, and is otherwise fully advised in the premises.

## I. BACKGROUND

Plaintiff Cecilia A. Hicks alleges that Defendant Client Services, Inc. violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.*, in several communications with the Plaintiff. Specifically, Plaintiff claims that on or about September 7, 2007 and September 21, 2007 the Defendant, a debt collector, left messages[1] on Plaintiff's voice mail that

_____

[1] The Plaintiff alleges that the content of the September 7 message is:

did not disclose the Defendant's identity, status as a debt collector, and purpose of the call as required by §§1692d(6) and 1692e(11).  The Complaint also states that Defendant left similar messages on other occasions.  Count I of Plaintiff's Complaint seeks damages for Defendant's violation of §§1692d(6) and 1692e(11) by allegedly failing to disclose in telephone messages that its identity, and that it was a debt collector attempting to collect a debt.  Count II seeks damages Defendant's alleged violation of the Telephone Consumer Protection Act, 47 U.S.C. §227, by using an automatic telephone dialing system to call cellular phones.  Plaintiff seeks a declaratory judgment, injunctive relief, statutory damages, and attorney's fees.

Plaintiff also seeks to bring this action on behalf of two classes.  The first is the FDCPA class, which she defines as

> (i) all Florida residents (ii) to whom Defendant Client Services, Inc. (CSI) left a telephone message (iii) in an attempt to collect a debt incurred for personal, family, or household purposes (iv) in which Defendant failed to state it is from a debt collector, or that it was an attempt to collect a debt (v) during the one year period prior to the filing of the complaint in this matter through the date of class certification.

(Complaint ¶24).  The second class Plaintiff defines is the TCPA class, which comprises

> (i) all Florida citizens (ii) who received any telephone call from Defendant to said person's cellular telephone service made (iii) through the use of any automatic telephone dialing system or an artificial or prerecorded voice, (iv) during the four year period prior to the filing of the Second Amended complaint in this matter

---

Hi. This message is for Cecelia Wilson or Willie Hicks.  My name is Barbara Norman.  My phone number is 1-800-521-3236, extension 3856.  This is regarding a personal matter.  I need you to call me back.  Once again my number is 800-521-3236, extension 3856.  Thank you.

(Complaint, ¶8).  Plaintiff claims the content of the September 21 message is:

This message is for Cecelia Hicks.  My name is _____(inaudible) and it is very important that you return my call.  The number is 1-800-521-3236 and my extension is 4715.

(Complaint, ¶8).

2

through the date of class certification.

(Complaint ¶25).  Defendant challenges class certification on the grounds that the Plaintiff has

not shown numerosity, that individual issues predominate, that class resolution is not the superior

method of adjudication, that injunctive relief is not available under the FDCPA, that monetary

damages predominate Plaintff's TCPA claims, and that Plaintiff is not an adequate

representative.


## II.  DISCUSSION

Parties seeking class action certification must satisfy the four requirements of Federal

Rule of Civil Procedure 23(a), commonly referred to as numerosity, commonality, typicality and

adequacy of representation.  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 613 (1997).  Parties

moving for class certification bear the burden of establishing each element of Rule 23(a).

London v. Wal-Mart Stores, 340 F.3d 1246, 1253 (11th Cir. 2003).  If the party seeking class

certification fails to demonstrate any single requirement, then the case may not continue as a

class action. Jones v. Roy, 202 F.R.D. 658, 662 (M.D. Ala. 2001). Specifically, the four

requirements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to meeting the four requirements of Rule 23(a), parties seeking class

certification must prove that the action is maintainable under one of the three subsections of Rule 23(b).  Amchem Prods., 521 U.S. at 614.  Here, Plaintiff seeks certification pursuant to Rule 23(b)(3), which requires that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individuals members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiffs also seek equitable relief, and seek class certification under Rule 23(b)(2), which is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole".  Fed. R. Civ. P. 23(b)(2).

In deciding whether to certify a class, a district court has broad discretion.  Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1569 (11th Cir. 1992).  Although a district court is not to determine the merits of a case at the certification stage, sometimes "'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'"  Mills v. Foremost Ins. Co., 511 F.3d 1300, 1309 (11th Cir. 2008) (quoting General Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982)).  A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been met.  Gilchrist v. Bolger, 733 F.2d 1551, 1555 (11th Cir. 1984).

## A. Claims under the FDCPA and TCPA

The FDCPA requires that debt callers give "meaningful disclosure of the caller's identity" when placing telephone calls, except when communicating with third parties. 15 U.S.C. §1692d(6).   The FDCPA also requires that in an initial oral communication, a debt collector must indicate that it is "attempting to collect a debt and that any information obtained will be

used for that purpose," and that in subsequent communications, the debt collector must identify itself as a debt collector. §1692e(11).

The TCPA prohibits the use of an "automatic telephone dialing system or an artificial or prerecorded voice" when calling "any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. §227(b)(1)(A). Congress defined "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." §227(a)(1). Congress has charged the FCC with rule-making authority under the TCPA. §227(b)(2). This Court does not have the jurisdiction to review the FCC ruling. 28 U.S.C. §2342; 47 U.S.C. §407; U.S. West Communs., Inc. v. Hamilton, 224 F.3d 1049, 1054 (9th Cir. 2000); Leckler v. Cashcall, Inc., 2008 WL 5000528 at *2-3 (N.D. Cal. Nov. 21, 2008).

**B. Numerosity**

There is no rigid standard for determining numerosity. The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." Cheny v. Cyberguard Corp., 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)). The focus of the inquiry is "whether joinder of proposed class members is impractical." Armstead v. Pingree, 629 F. Supp. 273, 279 (M.D. Fla. 1986). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." Fuller v. Becker & Poliakoff, P.A., 197 F.R.D. 697, 699 (M.D. Fla. 2000). The "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied." LaBauve v. Olin Corp., 231 F.R.D. 632, 665 (S.D.Ala. 2005) (citing Bacon v. Honda of Am. Mfg., Inc., 370

5

F.3d 565, 570 (6th Cir. 2004)).

*1. FDCPA Class*

Defendant argues that Plaintiff has offered only that Defendant admitted placing between 1,000 and 10,000 messages at Florida debtor's phone numbers.  Defendant argues that this could include a "commonplace" situation: a message left with another live person, and thus the debtor would not fall under the scope of the class Plaintiff seeks.  Further, Defendant contends that because Defendant did not use scripts, it is impossible to determine if the messages were similar to the ones Plaintiff alleges that she received.  Plaintiff responds that the messages left on class members' voice mails need only have no information regarding Defendant's identity or that Defendant was a debt collector, and need not be similar in any other way.  Plaintiff notes that the definitions in her Request for Admissions specifically define messages as "includ[ing] nothing more than a person's name, a phone number and a reference to some important matter," and that Defendant admitted to leaving such messages.  Plaintiff also notes that Donald Funke, Vice President of Operations for Defendant, stated during a deposition that it was Defendant's policy of not leaving information regarding its identity, or that the call was from a debt collector.

As Defendant has admitted to leaving over 1,000 messages, the Court can reasonably assume that at least 0.5% , or 50, were left on voice mail systems rather than with third persons. Also, Plaintiff has sufficiently alleged that the Defendant did not leave the pertinent information on those messages.  As Plaintiff notes, Defendant has not contended that it did leave information identifying itself by name or as a debt collector on those messages.  Mr. Funke's deposition stating the Defendant's policy gives evidence that there a sufficiently large number of people received messages allegedly violating the FDCPA.  Therefore, Plaintiff has sufficiently met the

requirements of numerosity.

*2.  TCPA Class*

A claim under 47 U.S.C. §227(b)(1)(A)(iii) of the TCPA requires that the caller used an "automatic telephone dialing system or an artificial or prerecorded voice".  Plaintiff has alleged that the Defendant has used an automatic telephone dialing system.  Defendant has denied using such a device as defined in the TCPA, and has described in a deposition the type of dialing device it uses, which calls numbers that are manually entered into it by the Defendant's staff.  Defendant describes the device as being a "non-predictive, non-sequential, and non-random autodialer" in its responses to interrogatories.

Congress defined "automatic telephone dialing system" in the TCPA to be a device that has the ability "(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." §227(a)(1).  The FCC has issued rulings expanding this definition to include "predictive dialers", which the FCC defined as "having the capacity to dial numbers without human intervention" and as "'equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls . . . . [i]n most cases, telemarketers program the numbers to be called into the equipment . . .'" FCC, IN THE MATTER OF RULES AND REGULATIONS IMPLEMENTING THE TELEPHONE CONSUMER PROTECTION ACT OF 1991: REQUEST OF ACA INTERNATIONAL FOR CLARIFICATION AND DECLARATORY RULING, 07-232, ¶12, n.23 (2007) ("FCC RUL. 07-232") (quoting and affirming FCC, IN THE MATTER OF RULES AND REGULATIONS IMPLEMENTING THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 03-153, ¶131 (2003) ("2003 TCPA ORDER").  The FCC also stated that the "purpose of the requirement

that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented" and that to exclude equipment because "it relies on a given set of numbers would lead to an unintended result." 2003 TCPA ORDER, ¶133.  Thus, one may reasonably conclude that the FCC interprets "automated telephone dialing systems" as including any type of automated dialing technology.

While Defendant has protested that its calling device is not an "automatic telephone dialing system" and has described it as "non-predictive", the more detailed description its executive gives under deposition suggests that it would fall under the type of device the FCC contemplated in its ruling on predictive dialers.  Mr. Funke answered affirmatively that once the numbers are entered into the dialer, the device will continue to dial numbers regardless of whether live employees are present, and if a live person answers, it will connect that person with Defendant's employee. [Funke Deposition, ¶¶30, 36].  This type of device, which calls a set of numbers without human intervention, likely falls under the FCC definition of "automatic telephone dialing systems".  However, because this Court finds that certification of the TCPA claim is inappropriate for other reasons below, it will not rule on this issue.

Defendant also argues that Plaintiff has not established numerosity in the TCPA claim because Plaintiff has only offered evidence of the number of calls that were made, but not the number that were made to wireless phones in Florida.  Plaintiff has requested in her Reply that the Court postpone addressing this element in the TCPA claim until Plaintiff can conduct discovery and analysis of the 100,000 wireless phone numbers Defendant has called to determine which calls were made to Florida numbers.   While Plaintiff anticipated being able to supply file the information by late November, no such filing yet appears on the record.  Because this Court

finds, for reasons stated below, that the Plaintiff has failed to establish the requirements for certifying the TCPA class, it need not rule on whether Plaintiff has established numerosity.

### C. Commonality and Rule 23(b)(3) Predominance

As Defendants have argued the commonality issue of Rule 23(a) and the predominance issue of Rule 23(b)(3) together, we discuss them both in this section.

Rule 23(a)'s commonality prerequisite requires at least one issue common to all members of the class. However, it "does not require that all of the questions of law or fact raised by the case be common to all the plaintiffs." Walco Invs., Inc. v. Thenen, 168 F.R.D. 315, 325 (S.D. Fla. 1996). The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." In re Terazosin Hydrochloride, 220 F.R.D. 672, 687 (S.D. Fla. 2004); Agan v. Katzman & Korr, P.A., 222 F.R.D. 692, 697 (S.D. Fla. 2004); In re Amerifirst Sec. Litig., 139 F.R.D. 423, 428 (S.D. Fla. 1991). However, "a class action must involve issues that are susceptible to class-wide proof." Cooper v. Southern Co., 390 F.3d 695, 713 (11th Cir. 2004) (quoting Murray v. Auslander, 244 F3d 807, 811 (11th Cir. 2001)).

"Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." Klay v. Humana, Inc., 382 F.3d 1241, 1254 (11th Cir. 2004). Though similar to the commonality issue, the predominance requirement is "far more demanding." Cooper, 390 F.3d at 722; see also, Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997). The court's inquiry is typically focused on "whether there are common liability issues which may be resolved efficiently on a class-wide basis." Brown v. SCI Funeral Servs. of Fla., 212 F.R.D. 602, 606

(S.D. Fla. 2003).  Issues that are subject to generalized proof and applicable to the whole class must predominate over the issues involving individualized proof.  <u>Kerr v. City of W. Palm Beach</u>, 875 F.2d 1546, 1558 (11th Cir. 1989).  To conduct this inquiry, the Court must consider the cause of action and "what value the resolution of the class-wide issue will have in each member's underlying cause of action."  <u>Rutstein v. Avis Rent-A-Car Sys., Inc.</u>, 211 F.3d 1228, 1234 (11th Cir. 2000).

*1. FDCPA Class*

Plaintiff presents the FDCPA class as having the common elements of having a received a telephone message that did not inform the consumer the identity of the caller or that the call's purpose was to collect a debt.  Plaintiff argues that the class definition presents a common factual situation with the common legal issue of whether the calls violated the FDCPA by not including necessary information, and that these issues predominate of individual issues.  Defendants argue that Plaintiff fails to meet the predominance standard because the FDCPA applies only to consumer debt collection, and it has no information on whether the debts it collects on are consumer or non-consumer debts.  Defendants also argue that the messages that it used live employees to leave unscripted messages, and that therefore it is impossible to determine without file-by-file analysis what is common in the messages.

Plaintiffs counter that Defendant's lack of records regarding whether Defendant's collection efforts were directed at consumers or non-consumers does not preclude certification.  Plaintiffs counter Defendant's argument regarding the similarity of messages by noting that Defendant has admitted to a policy of leaving messages without the information pertinent to Plaintiff's FDCPA claim.

10

Several courts have ruled that a debt collector's lack of information regarding the types of debts it collected does not preclude class certification.  E.g., Macarz v. Transworld Sys., 193 F.R.D. 46, 57 (D. Conn. 2000); Borcherding-Dittloff v. Transworld Sys., 185 F.R.D. 558, 563 (W.D. Wis. 1999); Wilborn v. Dun & Bradstreet Corp., 180 F.R.D. 347, 357 (N.D. Ill. 1998).  Defendants have cited several cases under the Truth in Lending Act, e.g., Buford v. American Fin. Co., 333 F. Supp. 1243 (N.D. Ga. 1971), purportedly to show that class certification has been refused where a necessary element of Plaintiff's case was that the debt at issue was a consumer debt.  These cases are inapposite, and this Court finds the cases ruling against preclusion of class certification to be more persuasive.  As stated in Wilborn, "[t]he need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class actions (sic). If that need alone precluded certification, there would be no class actions under the FDCPA." 180 F.R.D. at 357.  Macarz noted that the Congressional purpose in enacting the FDCPA would be "thwarted" if a large and sophisticated debt collection company could "avoid class action liability by mere fact of inadequate record-keeping." 193 F.R.D. at 57.  As these cases have found, the problems posed by the incompleteness of a debt collector's information on the debts it attempts to collect should not bar consumers from filing suit as a class.  Although determining which debts are consumer will require some effort, there are means for making such determinations.  Defendant's customers should be able to provide information regarding the debts, and proper drafting of the claim form may help exclude non-consumer debts.  Borcherding-Dittloff, 185 F.R.D. at 563; Macarz, 193 F.R.D. at 57.

Defendant's arguments against commonality and predominance fail.  The single issue of whether class members received phone messages that lacked information required by the FDCPA

is common to the class members and predominates over any individual issue.  The exact script of the messages need not be common to the class members, since it is the *lack* of information that is relevant.  As Defendant's executive has admitted in deposition, it was Defendant's policy not to disclose Defendant's identity, that it was a debt collector, or that the call was in regards to collecting a debt. [Funke Deposition, ¶¶30, 36].  Plaintiff has shown that the common issue predominates over the individual issues.

*2. TCPA Class*

Plaintiff puts forth that commonality and predominance exist in the TCPA claim because the Defendant admitted that it called debtors using an automatic telephone dialing system at any number it obtained without determining if the number belonged to a wireless phone.  The common issue of receiving the call at a wireless number predominates other individual issues, according to the Plaintiff.  Defendant responds that Plaintiff's proposed TCPA class is not capable of meeting the predominance test because the Plaintiff must demonstrate a lack of prior express consent, which Defendant argues is an individualized fact.  Plaintiff replies that Defendant has the burden of producing evidence that there had been consent, and that Defendant has not done so.

Several courts have held that proof of consent is an essential individual issue under the TCPA that makes class certification inappropriate.  E.g., Gene & Gene LLC v. BioPay LLC, 541 F.3d 318, 326-27 (5th Cir. 2008); Levitt v. Fax.com, 2007 U.S. Dist. LEXIS 83143 at *11-13 (D. Md. May 25, 2007); Kenro, Inc. v. Fax Daily, Inc., 962 F. Supp. 1162, 1169-70 (S.D. Ind. 1997) (ruling that the consent issue made class certification inappropriate because of lack of typicality, commonality, and predominance); Forman v. Data Transfer, Inc., 164 F.R.D. 400, 404 (E.D. Pa.

1995) (same).  Plaintiff attempts to distinguish Gene & Gene by noting that the defendants in that case provided evidence of consent, but the Defendant in this case has not.  541 F.3d at 328-329. While the defendants' evidence may have played a role in Gene & Gene, it does not appear to have played a role in the other decisions cited above.  E.g., Levitt v. Fax.com, 2007 U.S. Dist. LEXIS at *11-12 (ruling against class certification while noting the *lack* of evidence regarding consent). One court ruled in favor of class certification specifically because the defendant in that case asserted that consent arose from the class members' voluntary inclusion in the single database from which the defendant obtained their numbers.  Kavu, Inc. v. Omnipak Corp., 246 F.R.D. 642, 647-48 (W.D. Wash. 2007).   Those particular circumstances lent themselves to resolving the consent issue on a class-wide basis; they do not exist here.

Plaintiff claims that she will be able to show at trial the lack of express consent by herself and the class members.  She does not, however, describe how she intends to do so without the trial degenerating into mini-trials on consent of every class member.  Plaintiff stresses that it is Defendant's burden to produce evidence of lack of consent.  Like the court in Gene & Gene, we feel that it is irrelevant who has the burden.  Gene & Gene, 541 F.3d at 327.  Whether the burden is on the Plaintiff or the Defendant, ultimately consent is an issue that would have to be determined on an individual basis at trial.

Therefore, the Court finds that class certification of the TCPA claim would be improper for lack of commonality under Rule 23(a), and predominance under Rule 23(b)(3).  Since the Court finds that Plaintiff's arguments for class certification of the TCPA claims fail on these grounds, it will not discuss whether the proposed TCPA class meets the other requirements below.

**D.  Typicality**

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class.  Piazza v. Ebsco Indus. Co., 273 F.3d 1341, 1346 (11th Cir. 2001); Prado-Steiman v. Bush,  221 F.3d 1266, 1269 (11th Cir. 2000).  A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3).  Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001) (citing Prado-Steiman, 221 F.3d at 1279).  "The test for typicality, like commonality, is not demanding."  In re Disposable Contact Lens Antitrust Litig., 170 F.R.D. 524, 532 (M.D. Fla. 1996).

Plaintiff claims that "typicality is inherent in the class definition" because she alleges the violations of the FDCPA against her are the same as those against the class.  Indeed, her FDCPA claim is that she received a message from Defendant without information required by the FDCPA, and the class is defined to include those who received a message from the Defendant without that same information.  Thus, Plaintiff has satisfied this element for class certification. The Court notes that Defendant has not argued that Plaintiff's claims are atypical of those of the class.

**E. Adequacy of Representation**

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  To adequately represent a

14

class, a named plaintiff must show that she possesses the integrity and personal characteristics necessary to act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class.  In re Ins. Mgmt. Solutions Group, Inc., 206 F.R.D. 514, 516 (M.D. Fla. 2002); see also Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987).  In addition, this may include an examination of the chosen class counsel, especially if there is a potential conflict of interest.  London v. Wal-Mart Stores, 340 F.3d 1246, 1253 (11th Cir. 2003) (discussing cases in which class certification properly denied in instances such as where a named plaintiff's brother was class counsel, and where a named plaintiff was employee of class counsel).

Plaintiff has put forth that her claims are identical to those of the class members, and she therefore has no conflicting interests with the class.  She has submitted an affidavit in which she states her understanding of her responsibilities to the class in this action.  Also, Plaintiff has counsel who are experienced in class action and consumer litigation.  Defendant argues against Plaintiff's adequacy by noting her apparent lack of understanding of the FDCPA during her deposition, and contrasted it with her statement that she understands that she is alleging that Defendant violated the FDCPA.  According to Defendant, this inconsistency makes the Plaintiff not credible as a witness.  Defendants also attack her adequacy by pointing to her lack of obligation to pay expenses.

Plaintiff counters by stating that the a class representative's lack of knowledge of litigation is not a weighty factor when assessing adequacy of representation.  Further, she argues that the deposition shows that she has knowledge of why she is suing – because she alleges that the Defendant did not identify itself when leaving a message.  Plaintiff also argues that her

15

statement that her counsel was paying her expenses does not conflict with her understanding that she is liable on a pro rata basis for the costs of litigation.

The Court finds that Plaintiff is an adequate representative of the class.  She has demonstrated more understanding of the case than a lay person, and has an understanding of the basic nature of the case.  Such knowledge is enough to establish that a plaintiff is adequate to represent the class. <u>Martinez v. Mecca Farms, Inc.</u>, 213 F.R.D. 601, 607 (S.D. Fla. 2002); <u>see also</u> <u>In re Vivendi Universal, S.A.</u>, 242 F.R.D. 76, 88 (S.D.N.Y. 2007) (describing representatives as inadequate only when their knowledge as so insufficient that they would not be able or willing to protect the class's interests).

### F. Rule 23(b)(3)

Rule 23(b)(3) has two requirements: that questions of common fact or law predominate over individual issues, and that class action litigation is the superior method for fair and efficient adjudication of the claims.  Fed. R. Civ. P. 23(b)(3).  The predominance requirement was discussed above in section II.C.

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and
> (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3); <u>see also</u>, <u>De Leon-Granados v. Eller & Sons Trees, Inc.</u>, 497 F.3d 1214, 1220 (11th Cir. 2007).

Plaintiff has argued that class action is the superior method for adjudication of these claims because it would be the most efficient and consistent method.  She further argues that the amount of statutory damages per claim is relatively small, and she implies that it would be improbable that a large number of class members would be informed enough or have the initiative to litigate the claims themselves individually.  Defendant has not disputed Plaintiff's claims that class action is the superior method of adjudication for the FDCPA claim, or at least has not separated its arguments on predominance from those on superiority.

The Court finds that the arguments that the Plaintiff has put forth sufficiently establish that class action would be the superior method of adjudicating these claims.  The large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that class action would be the superior method of adjudicating the FDCPA claim.

### G. Rule 23(b)(2)

Plaintiff seeks to bring a "hybrid" class action, for both monetary damages and injunctive relief.  "A hybrid Rule 23(b)(2) class action is one in which class members seek individual monetary relief . . . in addition to class-wide injunctive or declaratory relief." Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1554 (11th Cir. 1986).   A hybrid or Rule 23(b)(2) class action is not appropriate where the "'appropriate relief relates exclusively or predominantly to monetary damages.'" Holmes v. Continental Can Co., 706 F.2d 1144, 1155 (11th Cir. 1983) (quoting Fed. R. Civ. P. 23(b)(2) Advisory Committee Notes (1966 Amendment)).  If the declaratory relief is merely incidental to the monetary damages, then a Rule 23(b)(2) action is inappropriate, as is a

17

hybrid class action.  Agan v. Katzman & Korr, P.A., 222 F.R.D. 692, 701-02 (S.D. Fla. 2004);

Swanson v. Mid Am. Inc., 186 F.R.D. 665, 668-69 (M.D. Fla. 1999).  As this Court has

previously found, the FDCPA "specifically provide[s] for money damages as the appropriate

relief," but does not specifically provide for injunctive relief. 15 U.S.C. §§1692k(a)(2)(B),

1692k(a)(3); Id. at 702.  Therefore, the appropriate relief for an FDCPA action is monetary

damages, and a Rule 23(b)(2) action and hybrid class action would be improper. Agan, 222

F.R.D. at 702.


### III.  CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  Plaintiff Cecelia A. Hicks's Motion for Class Certification [DE 61] is **GRANTED in part**;

2.  The Court hereby certifies a class pursuant to Fed. R. Civ. P. 23(b)(3) consisting of:

(a) all Florida residents

(b) to whom Defendant Client Services, Inc. (CSI) left a telephone message

(c) in an attempt to collect a debt incurred for personal, family, or household purposes

(d) in which Defendant failed to state it is from a debt collector, or that it was an attempt to collect a debt

(e) during the one year period prior to the filing of the complaint in this matter through the date of class certification;

18

3.  Cecelia Hicks is hereby certified as Class representative;

4.  Donald A. Yarbrough, Esq. and Craig M. Shapiro, Esq. are hereby certified as Class

counsel.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this

10th day of December, 2008.


WILLIAM P. DIMITROULEAS
United States District Judge


Copies furnished to:

Donald A. Yarbrough, Esq.
Craig M. Shapiro, Esq.
Dale T. Golden, Esq.

19